

**SIGNED this 14 day of April, 2008.**

_____
**R. Thomas Stinnett**
**UNITED STATES BANKRUPTCY JUDGE**

_____

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF TENNESSEE
SOUTHERN DIVISION

In re:                                             No.  04-15864
                                                   Chapter 11
KATHLEEN ANN MCINTIRE

            Debtor


Appearances:  David J. Fulton, Wooden, Fulton & Scarborough, PC, Chattanooga, Tennessee, for the
              Debtor

              Harry R. Cash, Grant, Konvalinka and Harrison, Chattanooga, Tennessee, for
              Chattanooga Neighborhood Enterprise

Judge R. Thomas Stinnett, United States Bankruptcy Court


### MEMORANDUM


        The debtor, Ms. McIntire, filed this chapter 11 case in September 2004. That was more

than five years after she began a construction project on her home that was financed with a loan

provided or administered by Chattanooga Neighborhood Enterprise, Inc. (CNE). CNE took a mortgage

on the debtor's home to secure the loan debt. The debtor has filed an objection to CNE's claim for the

balance due on the debt, and CNE has filed a motion for summary judgment on the objection. Fed. R.

Bankr. P. 9014 & 7056; Fed. R. Civ. P. 56. This memorandum deals with CNE's motion for summary judgment.

The main part of the debtor's objection asserts claims against CNE for damages arising from the construction project and asks that the damages be credited against CNE's claim for the balance due on the loan debt. The debtor relies on an estimate of damages by Criswell Claim Services. Docket No. 64, Exh A. The estimate is more than double the amount of CNE's claim. The objection also asserts a separate claim for an undetermined amount of damages resulting from the lack of electrical, water, and other necessary services at her home during the construction work.

The debtor's response to CNE's motion for summary judgment finally included a clear statement of a claim suggested in earlier pleadings. The response asserts that CNE is liable to the debtor for damages caused by the contractor's work because she hired the contractor on the basis of misrepresentations by CNE that he was qualified to do the job.

CNE's motion for summary judgment relies on three defenses; the debtor's claims are barred by (1) the provisions of the construction loan agreement and other documents executed by the debtor, (2) the prior decision of an arbitration panel, or (3) the Tennessee statute of limitations that applies to the debtor's claims.

The debtor serves as the "debtor in possession" in her chapter 11 case, and in that capacity she has many of the rights, powers, and duties of a bankruptcy trustee. 11 U.S.C. §§ 1106-1108. For ease of expression, however, the court will refer to Ms. McIntire simply as the debtor.

The parties have proceeded on the assumption that their basic rights and liabilities are controlled by Tennessee law. The court agrees. The contracts are subject to Tennessee law, except to the extent that federal law intrudes in some respects. Construction Agreement ¶ 5.17; *Deaton v. Vise*, 186 Tenn. 364, 210 S.W.2d 665 (1948). The debtor's alleged tort claims against CNE are based on actions by the contractor and CNE in performance of the construction work at the debtor's home in Chattanooga. Tennessee law will determine whether the facts relied upon by the debtor are sufficient to give her a cause of action against CNE for damages resulting from the contractor's defective work,

and if so, whether her right to recover is barred by any of CNE's defenses. 11 U.S.C. §§ 323, 363, 541(a), 558, 1106(a) & 1107; *Hataway v. McKinley*, 830 S.W.2d 53 (Tenn. 1992).

The court can grant a motion for summary judgment only if there is no genuine issue of material fact, and based on the undisputed facts, the law entitles the party who filed the motion to judgment in its favor. A genuine issue of material fact exists when: (1) the evidence is sufficient for a jury to decide the question of fact in favor of the party opposed to summary judgment; (2) the disputed fact relates to a matter that is in dispute; (3) and, the jury's finding of fact might affect the outcome of the lawsuit. The court must view the evidence and the reasonable inferences from the evidence in the light most favorable to the party not moving for summary judgment. *Balmer v. HCA, Inc.*, 423 F.3d 606 (6th Cir. 2005); *Roberson v. Cendant Travel Services, Inc.*, 252 F.Supp.2d 573 (M. D. Tenn. 2002).

The court decides the motion on the basis of the pleadings and the evidence submitted by the parties. The evidence generally can be any evidence that would be admissible in a trial of the lawsuit. Fed R. Bankr. P. 9014; Fed. R. Bankr. P. 7056; Fed. R. Civ. P. 56(c), (e). 10A Charles A. Wright, et. al., *Federal Practice and Procedure 3d* § 2721. The court does not have the duty to search the record for evidence favoring either party and generally should consider only the evidence submitted by the parties or brought to the court's attention. *Neely v. Good Samaritan Hospital*, 494 F.Supp.2d 837 (S. D. Ohio 2007).

CNE's motion for summary judgment relies on documents from the home improvement transaction. The documents were introduced by an affidavit from CNE's manager of loan servicing. The debtor has not challenged the admissibility of the attached documents.

The construction agreement between the debtor and the contractor, Jabaley, is dated March 31, 1999. It provided that the construction would begin on April 12, 1999 and would be satisfactorily completed by June 26, 1999. The court will deal with other provisions of the construction agreement as they become relevant.

The debtor's amended affidavit gives the following account of her dealings with CNE and the contractor:

2. I chose Mr. Jabaley as the contractor for my residence based solely on CNE's recommendation that he was a good contractor, that they had no problems with him, and that he was on their approved list, which CNE provided to me.

3. I learned after hiring Mr. Jabaley that he was in default on three or four CNE jobs at the time I hired him.

4. CNE advised me that Jabaley was removed from the approved list during the project on my home (the "Project").

5. I learned Jabaley hired unlicensed men found at a supply store to build the roof. They changed the roof architecture without my knowledge or consent. This has resulted in the third floor of my home being unusable and unsafe.

6. There were many instances of no work crew showing up.

7. I had no electricity at my home for nine months, no water for over four months, no bathroom use for nine months, requiring me to shower down the street.

8. The damage done by Jabaley is such that . . . my homeowner's insurance carrier . . . will not insure me for any claim involving damage caused by the builder. This has left my house unusable for income production and for any access by others. It remains so to date.

* * *

14. . . . Neither Jabaley nor any of his subcontractors, except the fired electrician, were willing to make this assertion [that I did not cooperate and was difficult] at the arbitration. There were no locks on my doors and my schedule was determined, every day for nearly a year, by whether or not workmen showed up that day. Jabaley's high school friend at CNE who was running the Project at that time, recommended that Jabaley make this erroneous assertion.

* * *

16. I started making payments to CNE on this loan with stated protest (on each check) because I signed the loan documents and felt I needed to comply with every requirement irrespective of the other party's bad actions. . . .

17. The City inspection departments cited the Project with multiple code violations and charged the electrician a double fine.

18. When the second contractor draw was submitted I was required to sign in advance for the work being done with no date on the document. CNE inspectors came to the Project and handled all the paper work and knew that the work was not done but required me to sign because Jabaley allegedly did not have any more money for materials or labor.

19. I increased the cost of the Project by ten thousand dollars in order to get the job finished and get my home back.

20. CNE inspectors advised me to make verbal changes to the scope of work on the Project over my objection and advised me "that is what is done."

21. There were approximately eight Work Write Ups, but CNE only provided one to the court.

22. The only time Jabaley appeared at the Project was with a CNE representative to get a draw request signed.

23. Prior to the two final draws that Jabaley received, I verbally and in writing instructed them not to disburse the final two draws. CNE did anyway.

24. In May, 1999, I made an arbitration request due to serious problems occurring at the Project. This request was ignored by CNE as was the next one.

25. Finally arbitration was initiated in October, 1999, when Jabaley requested arbitration.

26. When the arbitration occurred, the only issue I was allowed to address was the amount of money CNE had paid Jabaley in draws and whether he was entitled to any more money.

27. The arbitrators did not view the Project site, as promised and agreed, and did not permit me to argue or show damages that have been caused to my home.

28. At the time of the arbitration, I was without an attorney because I was led to believe the arbitration process would take care of all issues. I trusted CNE and the process. I paid my arbitrator and was charged by CNE for arbitration and other items in breach of contract.

29. Although the contractual documents that I signed provided that CNE's sole legal duty to me is to advance loan proceeds when obligated to do so, in actuality their involvement in the Project greatly exceeded their contractual duty.

30. At all times during Jabaley's involvement with Project, representatives of CNE supervised and inspected Jabaley's extent of work and work quality on the Project. In lieu of Jabaley, they advised and supervised the Project.

31. CNE asked me to grant extensions so that Jabaley could complete the Project. I did as they requested, a number of times, until Jabaley declared default in October, 1999.

32. I only signed draw requests because CNE told me to sign them and stated that Jabaley had no funds to complete the Project otherwise.

* * *

35. As shown by the exhibit attached to the Hearing Memorandum, Document [Docket] Number 88 . . . the monetary damages I have suffered greatly exceed the claim of CNE against my residence.

The exhibit referred to in the last quoted paragraph is the estimate of damages done by Criswell Claim Services.

CNE's motion for summary judgment is not supported by any affidavit or other evidence that directly contradicts the debtor's affidavit. The motion is based on the documents executed in the transaction. The court will take the fact statements in the quoted paragraphs as undisputed facts.

Discussion

The debtor's main claim against CNE relies on Tennessee cases that have held a defendant liable for damages on either or both of two grounds: (1) negligent misrepresentation; (2) negligent performance of a duty to the plaintiff that the defendant voluntarily assumed.

CNE can argue for summary judgment on the ground that the debtor's evidence does not include facts essential to proving a claim under one or more of the legal theories she relies upon. 10B Charles A. Wright, et. al., *Federal Practice and Procedure 3d* § 2727 at 471; *Manning v. Engelhard Corp.*, 929 F.Supp. 1508 (M. D. Ga. 1996). This argument is not part of CNE's three major arguments, but CNE's supplemental brief apparently added it with regard to the debtor's claim of negligent misrepresentation.

The argument is unclear. The point seems to be that the standard of proof set by Tennessee law must be considered in deciding whether the debtor's evidence is sufficient to prove negligent misrepresentation. CNE argues that the evidence fails to describe the false statements with particularity and to give the name of the employee who made the statements.

As to negligent misrepresentation, the Tennessee courts have adopted the principles set out in section 552 of the Restatement 2d of Torts. *Tartera v. Palumbo*, 224 Tenn. 262, 453 S.W.2d 780 (1970); *Stinson v. Brand*, 738 S.W.2d 186 (Tenn. 1987); *Restatement 2d Torts* § 552 (1977). The claim for negligent misrepresentation requires proof that CNE in the course of its business supplied information to the debtor to guide her in selecting a contractor and failed to exercise reasonable care or competence in obtaining or communicating the information. *Bennett v. Trevecca Nazarene University*, 216 S.W.3d 293 (Tenn. 2007); *Ingram v. Cendant Mobility Financial Corp.*, 215 S.W.3d 367 (Tenn. Ct.

App. 2006). According to the debtor, CNE represented that Jabaley was a good contractor and it had no problems with him, but he was already in default on three or four CNE jobs, and from the very beginning of work on her house, he failed to do the work competently and required payment in advance of work, and his defective work caused significant harm to her house. The debtor also states that she relied on CNE's representations as the basis for hiring Jabaley. These facts are sufficient to establish a claim against CNE for negligent misrepresentation, unless CNE is correct in arguing that more detail is required.

The debtor has described the false statements with particularity. If Rule 9 applied, it would require fraud to be pleaded with particularity, which might require the debtor to state the name of the person who made the false representation. Fed. R. Bankr. P. 9014; Fed. R. Bankr. P. 7009; *Trull v. Central Carolina Bank & Trust Co.*, 450 S.E.2d 542 (N. C. Ct. App. 1994). The debtor's claim of negligent misrepresentation does not require proof of fraudulent intent. *Ingram v. Cendant Mobility Financial Corp.*, 215 S.W.2d 367 (Tenn. Ct. App. 2006). As a result, Rule 9 and its particularity requirement do not apply. The failure to name the employee who made the misrepresentations does not make the debtor's evidence insufficient to establish a claim against CNE for negligent misrepresentation.

Of course, one or more of CNE's three major defenses may still prevent the debtor from recovering on the claim for negligent misrepresentation. That includes defenses based on contract provisions obviously intended to prevent CNE from being liable to the debtor on the ground that it misrepresented the qualifications of potential contractors. This brings the court to the question of whether CNE can prevail on one or more of its three major defenses.

The court begins its discussion with CNE's argument based on a prior decision by a panel of arbitrators. CNE contends that the debtor cannot have a claim against it for damages caused by the contractor's defective work because the arbitration award held that the contractor was not liable to the debtor for damages caused by defective work. *See Columbia Steel Fabricators, Inc. v. Ahlstrom Recovery*, 44 F.3d 800 (9th Cir. 1995); *Siegel v. Daiwa Securities Co.*, 842 F.Supp. 1537 (S. D. N. Y.

1994); *Cantrell v. Burnett & Henderson Co.*, 187 Tenn. 552, 216 S.W.2d 307 (1948) (non-mutual

defensive collateral estoppel); *United States Fidelity & Guaranty v. Bituminous Casualty Corp.*, 52 Tenn.

App. 13, 371 S.W.2d 801 (1963) (participation as party, privity not relevant).

The arbitration award does not specifically mention the debtor's claim against the

contractor for damages caused by defective work. CNE argues that the award still decided the claim

against the debtor and in favor of the contractor because the debtor raised the claim in the arbitration

hearing, and the arbitration award only granted the debtor a $1,500 penalty against the contractor for

delay.

The argument makes a distinction between damages for delay and damages for defective

work. The two are not easily separated. *Lomax v. Headley Homes*, 1997 WL 269432 (Tenn. Ct. App.

May 22, 1997). The distinction is relevant to the debtor's claim for an undetermined amount of damages

caused by the lack of electrical service, water service, and a workable bathroom for several months

during the construction. The construction agreement provided that the debtor would remain in the home

during the construction project. Docket No. 97, Att. 1, Exh. D, Construction Agreement ¶ 3.14. This

means the contractor agreed to do the work in a way that would not deprive the house of services or

features generally accepted as essential to normal use of the house as a residence. The debtor did not

have normal use of the house as a residence while the bathroom was unusable, and the court can

assume she did not have normal  use while the electricity and water were off. Thus, the work was

defective, instead of simply late. Furthermore, the lateness of the work is unclear since the debtor

admitted to granting extensions of time. Later references to the debtor's claim for damages based on

defective work mean the primary claim based on physical harm to the debtor's house and this claim for

reduced use of the house during the time the work was being done.

As to the effect of the arbitration award, CNE relies on the doctrines of res judicata and

collateral estoppel that are applied to final judgments under Tennessee law. In Tennessee law the

doctrine of res judicata generally prevents a person from asserting a claim in litigation after the claim

was decided against the person in earlier litigation. The doctrine of collateral estoppel is similar but

applies to particular issues that were decided in earlier litigation that did not necessarily involving the same claims. *Richardson v. Tennessee Board of Dentistry*, 913 S.W.2d 446, footnote 11 (Tenn. 1995).

For convenience, the court will usually refer to the arbitration award and the modified award together as one award or decision. The decision of the arbitrators has not been confirmed by a court. Tenn. Code Ann. §§ 29-5-312 & 29-5-315. The parties have assumed that the award still has the effect of a final judgment. Decisions from other states support that result. *Waterfront Marine Constr., Inc. v. North End 49ers Sandbridge Bulkhead Groups A, B and C*, 468 S.E.2d 894 (Va. 1996); *Thibodeau v. Crum*, 6 Cal.Rptr.2d 27 (Cal. Ct. App. 1992); *Motor Vehicle Accident Indem. Corp. v. Travelers Ins. Co.*, 667 N.Y.S.2d 741 (N. Y. Sup. Ct. App. Div. 1998). The Tennessee courts have applied the law of res judicata and collateral estoppel to arbitration awards. *Chattanooga Area Regional Transp. Auth. v. Local 1212 Amalgamated Transit Union*, 206 S.W.3d 448 (Tenn. Ct. App. 2006); *Reagan v. Higgins*, 88 S.W.3d 173 (Tenn. Ct. App. 2002).

The court will treat the award as a final judgment for the purposes of res judicata and collateral estoppel under Tennessee law, with one reservation. Many of the rules that apply to court proceedings do not apply to arbitration proceedings, and the parties to an arbitration agreement usually have control over what disputes can or will be decided in a particular hearing. *Compare Collins v. Oliver*, 23 Tenn. 439 (1844) (award more like judgment than contract); *Millsaps v. Robertson-Vaughn Constr. Co.*, 970 S.W.2d 477 (Tenn. Ct. App. 1997) (award enforced as contract); Tenn. Code Ann. §§ 29-5-302, 29-5-306, 29-5-310 & 29-5-314(a)(2); *D & E Constr. Co. v. Robert J. Denley Co.*, 38 S.W.3d 513, 521 footnote 10 (Tenn. 2001); *see also Kansas v. Thomas Constr. Co.*, 655 P.2d 471 (Kan. Ct. App. 1982). *Hopkins v. City of Midland*, 404 N.W.2d 744 (Mich. Ct. App. 1987). As a result, the res judicata and collateral estoppel effect of an arbitration award may not be exactly the same as if the award were a judgment. Federal law only requires the court to give the award the same effect in this court that it would have in a state court in Tennessee. 28 U.S.C. § 1738; *Bay Area Factors v. Calvert (In re Calvert)*, 105 F.3d 315 (6th Cir. 1997).

CNE's argument seems to be based on res judicata instead of collateral estoppel. CNE is not arguing that the arbitrators' decision on a particular issue, instead of the entire claim, prevents the debtor from proving the claim. CNE has the burden of proving the defense of res judicata. That includes the need to prove that the arbitration award was a decision *on the merits* of the debtor's claim against the contractor for damages caused by defective work. *Harris v. Mason*, 120 Tenn. 668, 115 S.W. 1146 (1909); *Patton v. Estate of Upchurch*, 242 S.W.3d 781 (Tenn. Ct. App. 2007). The arbitration panel could have decided on the merits in a variety of ways. It could have decided that: (1) the work was not defective; (2) the work was defective, but the contractor had claims against the debtor that more than offset her claim for damages; (3) the debtor's claim was barred by statute; (4) the debtor's claim was barred by the contract or other documents executed by the debtor; (5) the debtor's prior conduct waived the claim or estopped her from asserting it. Any of these decisions would have denied the debtor a viable claim against the contractor for damages caused by defective work. The arbitration award, however, contains no mention of the debtor's claim against the contractor for damages caused by defective work.

The debtor states that the arbitration panel did not allow her to present evidence on the question of damages for defective work and only allowed her to address the question of how much the contractor had been paid and how much he was still owed. The construction contract provides that the arbitration is subject to the Tennessee Arbitration Act. Tenn. Code Ann. §§ 29-5-301–29-5-320. The time limit in one of those statutes prevents the debtor from successfully attacking the arbitration award simply because she was not allowed to present evidence material to a dispute that was to be decided in the arbitration hearing. Tenn. Code Ann. §§ 29-5-313(a)(5), (b). The court is concerned, however, with whether the debtor's claim for damages caused by defective work was a dispute that was to be decided in the arbitration hearing and if so, the nature of the arbitrators' decision.

The debtor's description of the arbitration hearing could mean the arbitrators decided against her claim on the merits. But the refusal of the arbitrators to hear evidence and the failure of the award to even mention the claim strongly suggests the arbitrators did not rule on the merits. Since CNE

is seeking summary judgment, the court will view facts and the reasonable inferences in the way that is more favorable to the debtor than CNE. The court will treat the debtor's statement as meaning that the arbitrators did not decide her claim on the merits.

Though the arbitration award does not mention the debtor's claim against the contractor for damages caused by defective work, the award does contain general statements on the scope of the arbitration:

> This matter came to be heard on November 29, 1999 before the Arbitrators . . . appointed to serve pursuant to an Owner-Contractor Construction Agreement . . . between the parties . . . and upon application of both parties for the arbitration of certain matters pertaining to the Agreement between the parties.
>
> Upon consideration of all issues germane to the Agreement between the parties, and upon such evidence and proof as was presented and taken in support of the various claims and positions, the Arbitrators hereby make the following findings and Award . .

Do these statements eliminate the possibility of a ruling not on the merits? The debtor thought the arbitration came up for hearing on her damages claim against the contractor. Nevertheless, the first provision does not say that the arbitrators intended to or did rule against the claim on the merits. The claim could have come up and been excluded or otherwise not decided on the merits. The same thinking applies to the second general statement as to the scope of the arbitration hearing. The arbitrators could have considered all the issues germane to the construction agreement and the evidence that was presented for the parties' claims and positions without deciding the debtor's claim on the merits. These general provisions as to the scope of the arbitration hearing and the award do not require the court to conclude that the arbitrators ruled on the merits of the debtor's claim against the contractor for damages caused by defective work.

CNE relies on the debtor's request for arbitration, her attempt to litigate the claim during the arbitration hearing, and the arbitrators' decision to grant the debtor only a $1,500 penalty against the contractor for delay in completing the work. The court assumes the penalty was imposed under the contract provision allowing a penalty for delay, and the penalty provision was intended to set liquidated

damages for the delay. Docket No. 97, Att. 1, Exh. D, Construction Agreement ¶ 5.23; *Guiliano v. Cleo, Inc.*, 995 S.W.2d 88 (Tenn. 1999). Do these facts require the court to conclude that the arbitrators decided against the debtor on the merits of her claim against the contractor for damages caused by defective work? The court thinks not.

In situations like this, the Tennessee courts have allowed the parties to introduce the record of the earlier proceeding and other parol evidence to explain how the court dealt with the claim in the earlier proceeding. The parol evidence will usually attempt to show that the procedure followed by the court and the parties caused the court to exclude the claim from the earlier litigation or resulted in a decision that was not on the merits. *Estill v. Taul*, 10 Tenn. 467 (1830); *Fowlkes v. State*, 82 Tenn. 14 (1884); *Bank of Commerce v. State*, 96 Tenn. 591, 36 S.W. 719 (1896); *Patton v. Estate of Upchurch*, 242 S.W.3d 781 (Tenn. Ct. App. 2007); *see also Solarana v. Industrial Electronics, Inc.*, 428 P.2d 411 (Haw. 1967); *Davis v. American Family Mut. Ins. Co.*, 569 N.W.2d 64 (Wis. Ct. App. 1997); *Thomas M. McInniss & Assoc. v. Hall*, 349 S.E.2d 552 (N. C. 1986). The parties may also introduce parol evidence to show that the claim or issue was not a matter that came up for decision in the earlier litigation. *Harris v. Mason*, 120 Tenn. 668, 115 S.W. 1146 (1909); *Rutherford v. Parker*, 29 Tenn.App. 179, 195 S.W.2d 328 (1946).

As to parol evidence, the arbitration award and the modified award do not include the arbitration requests that were under consideration. CNE has not submitted the arbitration requests that it believes were dealt with in the arbitration. Even if all the arbitration requests were in evidence, the award still would not indicate that the panel ruled against the debtor *on the merits* of her claim against the contractor for damages caused by defective work. CNE has not presented any affidavits or other parol evidence relevant to this question. The debtor's affidavit raises genuine issues of material fact as to whether her claim was excluded from the arbitration or otherwise not decided on the merits.

The arbitrators could have decided that the claim against the contractor for damages caused by defective work was premature because the project was not complete. In this regard, the award allowed the debtor to continue work with the unused portion of the loan. *Estill v. Taul*, 10 Tenn.

467 (1830); *see Spinella v. B-Neva, Inc.*, 580 P.2d 945 (Nev. 1978) (liquidated damages distinct from

damages for defective work); *Page v. Travis-Williamson County Water Control and Improvement Dist.*

*No. 1*, 367 S.W.2d 307 (Tex. 1963); *Board of Education of Sault Ste. Marie v. Chaussee*, 177 N.W. 975

(Mich. 1920). Likewise, the penalty of $1,500 for delay may have been liquidated damages but only for

delay up to the time of the arbitration. *See Picadilly Square v. Intercontinental Const. Co.*, 782 S.W.2d

178 (Tenn. Ct. App. 1989); *Guiliano v. Cleo, Inc.*, 995 S.W.2d 88 (Tenn. 1999).

   The arbitration award terminated the debtor's construction contract with Jabaley and

allowed the debtor to find replacement contractors. The termination provision of the construction

contract deals with termination or cancellation by the debtor. It provides that if the cost of completing

the project exceeds the unused part of the loan, the contractor is liable for the difference. The amount

needed to complete could be taken to include the amount needed to repair harm done by the

contractor's prior work. The termination provision goes on to say, however, that termination does not

waive or abrogate any legal remedy of the debtor. The termination provision cuts both ways. It suggests

the debtor's claim for damages could have been dealt with as part of termination. The termination

provision also suggests that the hearing and the arbitrators' decision to terminate was not required to

deal with all the debtor's claims. Furthermore, the termination provision deals with termination declared

by the debtor, not with termination as the result of arbitration.  The arbitrators could have excluded the

claim from the arbitration proceeding because they thought the claim should be dealt with separately.

This decision would not have been on the merits and would not have put an end to the debtor's claim

against the contractor for damages caused by defective work. Docket No. 97, Att. 1, Exh. D,

Construction Agreement ¶ 5.1 & ¶ 5.7.

   Considering all the terms of the arbitration award and the modified award, the court

cannot say that the arbitration award must have been intended to settle all the rights and claims

between the debtor and the contractor. The conditions of the award on the debtor's right to receive the

penalty for delay suggest the arbitrators partly blamed the debtor for the delay. Docket No. 97, Att. 1,

Exh. E, ¶ 2 & ¶ 8. The penalty was to be paid by CNE, but if it was paid, the award treated the payment

as a loan disbursement to the contractor to pay the penalty to the debtor; it added the penalty amount to the debtor's loan debt. It did not require CNE to attempt to collect from the contractor and apply the amount collected to the loan debt. The award also did not say that the debtor could attempt to collect the penalty from the contractor. Thus, the penalty was essentially no benefit to the debtor.  Docket No. 97, Att. 1, Exh. E, ¶ 2 & ¶ 8. Being freed from dealing with the contractor was about the only benefit the debtor received from the award. She was allowed the remainder of the loan to continue the project, but the contractor was paid as if his work up to the time of arbitration was perfectly in accord with the contract except for the delay. Docket No. 97, Att. 1, Exh. F, ¶ 6; Exh. D, ¶ 4.1–4.6. That decision reduced the amount of the loan that remained for the debtor to use in completing the project. If the arbitrators intended to deal with the debtor's claim on the merits, the award is a strange result; it is more like an agreement between CNE and the contractor for their benefit than the result of litigation involving the debtor's claim for damages caused by the contractor's defective work. This suggests the award was not intended to deal with the debtor's claim for damages caused by defective work.

The debtor's statement that she did not have a lawyer at the arbitration hearing implies that she thought her claim for damages was denied or excluded from the arbitration on some legal ground that was not expected in arbitration and may not have been applicable under the agreement to arbitrate. If the claim was excluded, then the arbitration award left the debtor with the claim to pursue later.

In summary, the law of res judicata does not entitle CNE to summary judgment on the ground that the arbitration award was a decision against the debtor on the merits of her claim against the contractor for damages caused by defective work. The denial of summary judgment on this ground does not mean that CNE is wrong as to the effect of the arbitration. It only means the undisputed facts now before the court do not justify summary judgment on the ground that the arbitration panel decided against the debtor on the merits of the damages claim.

Next, CNE relies on the Tennessee statute of limitations or statute of repose that applies to the debtor's claim against the contractor *or CNE* for damages caused by the contractor's defective

work. The debtor has raised the question of whether her prior chapter 13 case extended the limitations or repose periods set by Tennessee law. The court can take judicial notice of the basic facts regarding the prior chapter 13 case that was filed in this court. Fed. R. Bankr. P. 9017; Fed. R. Evid. 201; *see, e.g.*, *Rickel & Assoc., Inc. v. Smith (In re Rickel & Assoc., Inc.)*, 272 B.R. 74 (Bankr. S. D. N. Y. 2002); *Northwestern Institute of Psychiatry, Inc. v. Travelers Indemn. Co. (In re Northwestern Institute of Psychiatry, Inc.)*, 268 B.R. 79 (Bankr. E. D. Pa. 2001). The debtor's prior chapter 13 case lasted about eight months; it was filed on September 23, 2003 and dismissed on May 28, 2004.

The debtor contends the chapter 13 case tolled the running of the limitations or repose periods, and therefore, she was entitled to an additional eight months to file suit after the limitations or repose periods would have expired if she had not filed the chapter 13 case. The Tennessee statutes do not include a provision that suspends or tolls the time for bringing suit while the potential plaintiff is the debtor in a bankruptcy case. The Tennessee statutes also do not treat any extension of time by § 108(a) of the bankruptcy code as tolling or suspending a period of repose or limitation. Tenn. Code Ann. §§ 28-1-101–28-1-115 & 28-3-205; *Weaver v. Hamrick*, 907 S.W.2d 385 (Tenn. 1995); *see also Danielson v. ITT Industrial Credit Co.*, 245 Cal.Rptr. 126 (Cal. Ct. App. 1988); *Otchy v. City of Elizabeth Board of Education*, 737 A.2d 1151 (N. J. Super. App. Div. 1999). As a result, the debtor's prior chapter 13 case did not entitle the debtor to an additional eight months to file suit.

Section 108(a) of the bankruptcy code may extend the time for the bankruptcy trustee or chapter 11 debtor in possession to file suit on a claim the debtor owned at the time of filing bankruptcy. If the period for a debtor to file suit under non-bankruptcy law did not expire before the debtor filed bankruptcy, then time for the bankruptcy trustee to file suit will expire *at the later of* the deadline set by non-bankruptcy law or two years after the debtor filed the bankruptcy case. 11 U.S.C. § 108(a). This statute does not provide that the running of periods set by state law is tolled for the debtor's personal benefit during any extension the statute may create for the bankruptcy trustee. No bankruptcy statute provides that a bankruptcy case extends the time set by non-bankruptcy law for the debtor to file suit in the debtor's own right and not on behalf of the bankruptcy estate.

In this chapter 11 case, § 108(a) could have extended the time for the debtor, as debtor in possession, to file suit. Section 108(a) did not extend the time if it expired before the debtor filed this chapter 11 case. CNE contends the time expired before the debtor filed this chapter 11 case. The court turns to that question.

The debtor relies on the limitations statute allowing six years to bring suit for breach of contract. Tenn. Code Ann. § 28-3-109. CNE relies on two other Tennessee statutes. One provides that an action for injury to real property must be commenced within three years after the cause of action accrued. Tenn. Code Ann. § 28-3-105(1). The other statute deals with actions to recover damages arising from the construction of an improvement to real property. The statute provides:

> All actions to recover damages for any deficiency in the design, planning, supervision, observation of construction, or construction of an improvement to real property, for injury to property, real or personal, arising out of any such deficiency, or for injury to the person or for wrongful death arising out of any such deficiency, shall be brought against any person performing or furnishing the design, planning, supervision, observation of construction, construction of, or land surveying in connection with, such an improvement within four (4) years after substantial completion of such an improvement.

Tenn. Code Ann. § 28-3-202.

The Tennessee courts focus on the gravamen of the plaintiff's claim to determine which statute applies. *Whaley v. Perkins*, 197 S.W.3d 665 (Tenn. 2006). The facts leave little doubt that the court should apply the statute allowing three years to file suit on a claim for injury to real property. *Prescott v. Adams*, 627 S.W.2d 134 (Tenn. Ct. App. 1981).

This conclusion does not contradict the other statute that allows four years to bring an action arising from the construction of an improvement to real property. The four year period of that statute cannot extend any period set by other Tennessee statutes for bringing an action. Tenn. Code Ann. § 28-3-204. The four year statute can shorten but not extend the three year period set by the other statute. This can happen because the three year period and the four year period have different beginning points. The three year limit begins when the cause of action accrues, but the four year period begins with substantial completion of the improvement. The cause of action for injury to real property

may not accrue until the injured party discovers or should have discovered the injury and the cause. *Prescott v. Adams*, 627 S.W.2d 134 (Tenn. Ct. App. 1981). Suppose the cause of action does not accrue under this rule until two years after substantial completion. The four year statute will allow the injured party only two years to file suit and will cut short the three year period set by the other statute. The four year period is an additional, outside limit on the time for filing suit when the injury to real property also comes within the terms of the four year statute. *Prescott v. Adams*, 627 S.W.2d 134 (Tenn. Ct. App. 1981).

The first question is whether the three year statute bars the debtor's claim based on CNE's alleged misrepresentation of the contractor's qualifications. The three year period would have begun when the cause of action accrued. The cause of action for misrepresentation would not have accrued, however, until the debtor discovered, or in the exercise of reasonable care and diligence, should have discovered the injury *and* the cause. *Northeast Knox Utility Dist. v. Stanfort Constr. Co.*, 206 S.W.3d 454 (Tenn. Ct. App. 2006). The arbitration hearing was held in November 1999. The debtor already knew that the contractor's poor work had harmed her house.  As to her claim against CNE, however, the alleged cause of the injury was CNE's misrepresentation that induced her to hire the unqualified contractor. The question is when she discovered, or in the exercise of due diligence and care, should have discovered the misrepresentation.

The evidence submitted by CNE to support summary judgment does not prove either point. The debtor's affidavit states that she discovered the misrepresentation after hiring the contractor, but that could have been anytime from shortly after hiring him until she filed the objection to CNE's claim. The debtor's affidavit hints that she discovered the misrepresentation while the work was still being done, but the facts do not allow the court to reasonably infer that conclusion. The debtor filed her objection to CNE's claim almost six years after the modified arbitration award in February 2000. The court suspects the debtor learned of the misrepresentation long before she objected to the claim, but the evidence does not allow the court to conclude that she did. The court cannot determine when the

debtor's cause of action accrued, and as a result, the court cannot say that the three year limit bars the

debtor's claim for damages based on CNE's misrepresentation of the contractor's qualifications.

The next question is whether the three year limit bars the debtor's main claim against

CNE for negligent supervision of the construction project. The debtor filed an arbitration request in May

1999 due to serious problems with the project. She at first refused to sign the second draw request

because the work had not been done, but CNE's employees convinced her to sign so the contractor

would have money to do the job. Judging from other dates on the second draw request, she must have

signed it sometime in May 1999. Docket No. 97, Att. 1, Exh. G, Second Draw Request. The debtor

wanted to pursue her damage claims against the contractor at the arbitration hearing in November 1999.

The arbitration award was entered in early December 1999, and the modified award was entered in

early February 2000. The modified award shows the amount of the prior loan disbursements to the

contractor. Before the final two disbursements, the debtor had directed CNE not to make them. The

wording of the modified award is unclear, but it means that CNE would make the final disbursement to

pay new contractors not later than 45 or 90 days after February 9, 2000. The modified award allowed

the debtor $7,276 as the remainder of the loan that she could use for more work on the project. The

debtor's estimate of damages is dated October 2005. This is an estimate of the amount needed to make

repairs – not a statement of expenses already incurred by the debtor in making the repairs. The estimate

includes over $38,000 for repairs needed to correct the contractor's defective work and to complete the

project. Most of the estimated amount appears to be for repairs. The debtor states that the contractor's

work made her house not usable for income production or access by third parties and it remained in that

condition at the time of the affidavit, which was filed in early 2007.  The debtor obviously did not use the

remainder of the loan to make major repairs of the contractor's prior work. She has not stated that she

used any of the money for that purpose.

The debtor also states that for nearly a year her house did not have locks on the doors

and her schedule was controlled by whether workers showed up or not. The start date set by the

contract was April 12, 1999, and modified arbitration award was entered in early February 2000. The

debtor's statement reasonably implies that the problems caused by having no locks and waiting for construction workers ended no later than April or May 2000.

The debtor states that she had no electricity service in the house for nine months and no water service for more than four months, and for nine months, she had no usable bathroom in the house and was forced to shower down the street,. The debtor's statements in her affidavit do not say exactly when these periods began and ended. The objection to the claim, however, states that these periods all occurred while the renovation work was being done. In other words, they ended before the work stopped. *Bank One v. Prudential Ins. Co.*, 939 F.Supp. 533 (N. D. Tex. 1996) (pleading as admission of fact).

The evidence implies that work on the project stopped no later than about year after the contract start date. The court can reasonably infer that work on the project stopped not later than the end of May 2000. Of course, the debtor could have observed CNE's supervision of the construction work only while the work was being done.

By the end of May 2000 the work had stopped, the debtor knew that the construction project had harmed her home and the harm would not be corrected by the contractor, by CNE, or by any other contractor to be paid with the remainder of the loan. She also knew that CNE's actions in supervising the construction work could be blamed for the harm done by the construction project. Her claim against CNE for negligent supervision of the construction accrued no later than the end of May 2000.

The arbitration award and modified award could not have postponed accrual to a later date. The debtor could not hope to repair all the problems with the remainder of the loan and did not try within the deadline set by the modified award. Furthermore, the hope of repair with the remainder of the loan would not postpone accrual of the cause of action. *Northeast Knox Utility Dist. v. Stanfort Constr. Co.*, 206 S.W.3d 454 (Tenn. Ct. App. 2006).

The debtor filed this chapter 11 case in September 2004, more than three years after the cause of action accrued. The claim against the CNE for damages caused by the contractor's defective

work and CNE's supervision was barred by the three year statute of limitations when the debtor filed this chapter 11 case.

For the sake of completeness, the court will consider whether the debtor's claims for negligent misrepresentation and negligent supervision are barred by the statute allowing four years to bring an action arising from defective construction of a home improvement. This statute is not subject to the rule that a claim for injury to real property does not accrue and the limitations period does not begin to run until the injured party discovers or should have discovered both the injury and the cause. The period begins with substantial completion of the project and ends four years later. *Chrisman v. Hill Home Development, Inc.*, 978 S.W.3d 535 (Tenn. 1998); Tenn. Code Ann. § 28-3-205 (equitable rules that may toll the period).

The first question under that statute is when substantial completion occurred. According to CNE, it is undisputed that no work has been done on the project since 1999. The undisputed facts do not clearly support that conclusion. They do support the court's earlier conclusion that work ended no later than the end of May 2000. The end of work on the project does not prove substantial completion. The statute defines substantial completion as follows:

> "Substantial completion" means that degree of completion of a project, improvement, or a specified area or portion thereof (in accordance with the contract documents, as modified by any change orders agreed to by the parties) upon attainment of which the owner can use the same for the purpose for which it was intended; the date of substantial completion may be established by written agreement between the contractor and the owner.

Tenn. Code Ann. § 28-3-201(2). This definition requires CNE to prove when the debtor was able to use the house for its intended purpose as a residence. The end of work is relevant evidence if there is also evidence the owner used the property as a residence when or about the time the work stopped.

CNE's evidence in support of summary judgment does not include any direct evidence on this point. The court has already determined that work ended not later than the end of May 2000. There were periods during the construction when the house had no electricity service, water service, or working bathroom. The debtor was using the house as a residence during some of those periods; she

used a shower down the street.  Those periods ended not later than the end of May 2000, when work on the project ended. Likewise, by the end of May 2000 the debtor no longer had the problem of no locks on the house. The debtor has not asserted a claim for damages based on being unable to use the house as her residence after the work stopped. Objection to Claim, Docket No. 64, Exh. A, Estimate of Damages; *Bank One v. Prudential Ins. Co.*, 939 F.Supp. 533 (N. D. Tex. 1996) (pleading as admission of fact); *Samaritan Health Center v. Simplicity Health Care Plan*, 459 F.Supp.2d 786 (E. D. Wis. 2006) (no hearsay problem with relying on opponent's expert opinion). The court can reasonably infer that the debtor was able to use the house as a residence at the time the work stopped, no later than the end of May 2000.

When the debtor filed this chapter 11 case in September 2004, the four year statute of repose already barred a suit to collect damages from CNE caused by negligent misrepresentation of the contractor's qualifications or negligent supervision of the construction work.

The debtor has not argued any other equitable grounds for extending the time allowed by either statute for filing suit. Tenn. Code Ann. § 28-3-205; *Fahrner v. SW Mfg., Inc.*, 48 S.W.3d 141 (Tenn. 2001) (equitable estoppel); *Pero's Steak and Spaghetti House v. Lee*, 90 S.W.3d 614 (Tenn. 2002) (fraudulent concealment).

In summary, the three year statute of limitations bars the debtor's main claim against CNE for damages caused by the contractor's defective work and CNE's failure to supervise. The four year statute of repose bars the debtor from bringing suit on that claim or the claim for damages caused by CNE's negligent misrepresentation.

The debtor contends that this result makes no difference to her ability to recoup the alleged damages by reducing CNE's claim up to the full amount. Tennessee law distinguishes recoupment from set-off. When two parties to a lawsuit have claims against each other, one generally cannot set off a claim against the other if the claim is barred by a statute of limitations or repose. Recoupment, however,  is not affected by a statute of limitations or repose because it is essentially a defensive claim. The debtor can be entitled to recoupment if she proves damages caused by CNE's

failure to comply with an obligation to her in the same transaction that gave rise to CNE's claim or damages caused by CNE's violation of a duty to the debtor that the law imposed in the making and performance of a contract between them. It makes no difference to recoupment that CNE's claim is based on a contract and the debtor's claim for damages is a tort claim. *Mack v. Hugger Bros. Constr. Co.*, 153 Tenn. 260, 283 S.W. 448 (1926); *Phoenix Iron Works Co. v. Rhea*, 38 S.W. 1079 (Tenn. Ct. Chan. App. 1896)

CNE argues that recoupment does not apply because the construction loan agreement and the construction agreement were separate transactions. The transactions came under the Chattanooga Home Improvement Program administered by CNE on behalf of local governments. CNE could make the loan to the debtor only if she hired a contractor on its list of approved contractors. The program apparently required CNE to be more involved in formation of the construction contract than a commercial lender would be. This is obvious from the exhibits that CNE relies upon. They reflect CNE's involvement in forming the construction contract. They also reflect its attempt to walk a thin line. It needed to be involved in the contracting process more than a commercial lender, but it needed to limit its liability to the parties to the same extent as a commercial lender, including liability based on performance of the construction contract. This problem is reflected in the releases, disclaimers, indemnity agreements, and other similar provisions in construction loan agreement. They were clearly intended to prevent the debtor from having a claim against or being able to recover damages from CNE on the basis of its involvement in making the construction agreement or its actions during the performance of the construction contract. Docket No. 97, Att. 1, Exhs. C & D.

The construction loan agreement incorporated the construction contract by reference, included the debtor's promise to use the loan for the project, and included the debtor's promise to enforce the construction contract against the contractor.

CNE did not sign the construction contract, but of course, the contract has numerous provisions related to disbursement of the construction loan. The construction contract also provided that if the parties submitted a dispute to arbitration, CNE would select one of the three arbitrators.

The debtor's allegations against CNE reflect the interweaving of the construction loan and the construction project. The debtor alleges the harm to her house was done by the incompetent contractor, but she hired him on the basis of CNE's false representations during the process of forming the construction contract, and CNE helped her in that process because it was to be the construction lender. Both contracts were related from the beginning under the home improvement program administered by CNE. The debtor asserts that even if CNE's employees were at her home to inspect only for CNE's purposes, they assumed the job of giving directions to workers and otherwise supervising the construction, and they did the job negligently. For the purpose of recoupment, the court concludes there was one transaction for the construction of improvements to the debtor's home. The debtor's claims clearly come within the doctrine of recoupment. They arose from the same transaction, the construction project on the debtor's home with financing by or through CNE. Bankruptcy law allows a debtor to object to a claim on the basis of recoupment. 11 U.S.C. § 558; *e.Spire Communications, Inc. v. Morris Plumbing & Electric Co. (In re e.Spire Communications, Inc.)*, 293 B.R. 639 (Bankr. D. Del. 2003).

Of course, recoupment will not be allowed if the contracts or other documents prevent it. The debtor seems to argue that a contractual release or similar provision cannot apply to her negligence claim or any tort claim arising from or related to performance of the contracts. Tennessee law generally allows a contract to protect a party from liability for negligence, including negligent misrepresentation. *Crawford v. Buckner*, 839 S.W.2d 756 (Tenn. 1992); *Carey v. Merritt*, 148 S.W.3d 912 (Tenn. Ct. App. 2004).

The court begins with the debtor's claim for damages based on misrepresentation of the contractor's qualifications. In the process of soliciting bids and selecting a contractor, the debtor executed at least two documents providing that CNE did not recommend or pressure her to pick a particular contractor. Docket No. 97, Att. 1, Exhs. A & B. In the construction loan agreement, the debtor agreed that the contractor was freely and voluntarily chosen. She also agreed that CNE's approval of

a contractor – the contractor's eligibility for the work – did not amount to a recommendation or selection of the contractor by CNE. Docket No. 97, Att. 1, Exh. C, § 1.a. & 1.d.

The debtor is clearly arguing that she treated the misrepresentations as a recommendation of the contractor. Thus, the pre-contract forms signed by the debtor and the construction loan agreement include the debtor's agreement that CNE did not recommend the contractor by means of any true or false representation. This agreement should prevent the debtor from recovering on the negligent misrepresentation claim because it prevents her from proving reliance on the misrepresentations. *Ingram v. Cendant Mobility Financial Corp.,* 215 S.W.2d 367 (Tenn. Ct. App. 2006). Since the debtor cannot prove reliance, she cannot prove negligent misrepresentation, and the claim is not available for recoupment.

The broad release provision also applies to a claim of negligent misrepresentation:

> Borrower agrees to indemnify and forever hold and save harmless and release CNE from any and all loss, cost, expense, injury or damage of every kind, nature or description, including reasonable attorneys' fees, arising under this Agreement or from any source whatsover. However, where CNE is the actual lender of its own funds, its obligations are defined hereunder as those of a lender, only, and this indemnity and hold harmless provision is applicable and specifically for the protection of CNE in every instance except for its obligations as a lender herein.

This release is broad enough to cover the debtor's misrepresentation claim against CNE since it applies to claims arising under the construction loan agreement or from any other source. The hold harmless provision should prevent the debtor from using the claim for the purposes of recoupment.

Release, waiver, or disclaimer provisions in a contract will protect a person from liability for simple negligence. They will not protect a person from liability based on actions that amount to gross negligence, recklessness, fraud, or any kind of intentionally harmful conduct. *Memphis & Charleston Railroad v. Jones*, 39 Tenn. 517 (1859); *Adams v. Roark*, 686 S.W.2d 73 (Tenn. 1985). The undisputed facts do not suggest anything other than negligent misrepresentation. Thus, the debtor cannot recoup damages based on negligent misrepresentation by CNE because the construction loan agreement

prevents her from proving that CNE made any negligent misrepresentations or that she relied upon them.[1]

This brings the court to the question of whether the contracts or other documents prevent the debtor from recouping her claim against CNE for damages caused by negligent supervision of the construction work.

Several provisions of the construction loan agreement are aimed at preventing CNE from being liable to the debtor on any theory for poor work done by the contractor.

> 1. b. . . . The Borrower assumes the risk of any non-completion of the Improve-ments which is not caused by the Lender's wrongful failure to advance Loan proceeds in accordance with the terms of the Agreement. . . . The Lender accepts no responsibility for the quality or timeliness of the work performed or materials supplied under the Construction Agreement . . . . The Lender's sole legal duties under this Agreement are to advance Loan proceeds when obligated to do so under the Agreement, and otherwise to comply with the terms hereof.
>
> 1. c. . . . The Borrower understands and agrees that all services provided by CNE (including but not limited to the application, processing, and approval of the Loan and recommendation of same to the Lender, the furnishing of forms for use by the Borrower, and other assistance in connection with this Agreement) shall not . . . create any liability on the part of CNE to Borrower for any failure or oversight by CNE in providing such services. . . . The Borrower hereby certifies that the Borrower has fully reviewed, and will review, any and all documents, papers, calculations, bids, plans, specifications and other materials provided by CNE for accuracy, completeness and compliance with the terms of this Agreement, and the Borrower will not rely upon CNE with regard to any aspect of this Agreement, except where CNE may be the Lender. Borrower agrees to indemnify and forever hold and save harmless and release CNE from any and all loss, cost, expense, injury or damage or every kind, nature or description, including reasonable attorneys' fees, arising under this Agreement or from any source whatsover. However, where CNE is the actual lender of its own funds, its obligations are defined hereunder as those of a lender, only, and this indemnity and hold harmless provision is applicable and specifically for the protection of CNE in every instance except for its obligations as a lender herein.
>
> . . .
>
> 6. Prior to disbursement of Loan proceeds or for any other purpose in connection with the completion of the Improvements, the Lender and/or CNE and the

---

[1] The *Ingram* case says that a contract provision negating the plaintiff's reliance will protect the defendant from liability for fraudulent misrepresentation. The court doubts this is an accurate statement of Tennessee law. *First National Bank v. Brooks Farms*, 821 S.W.2d 925, 928 (Tenn. 1991) (disclaimer of reliance equivalent to release or waiver of liability).

appropriate local government authorities shall have free access and right of entry at any reasonable time of day to inspect all or any portion of the Property and the Improvements. These inspections are for the benefit of the Lender, to assure that the Loan proceeds are being expended on the Property in accordance with the approved application and the Construction Agreement, and for the benefit of the local government authority, to assure that local law is being complied with in the project. In the event of any such inspection, CNE may provide the Borrower with the results of the inspection, but CNE shall not issue direct orders or instructions to the contractor or subcontractor performing the work, except as authorized by the Borrower. . . . The Borrower understands and agrees that any inspections . . . are strictly for the benefit of the Lender or the local government authority, that the Borrower may not rely on such inspections, and that the Borrower shall conduct its own independent inspections to assure itself that the Improvements are being completed in accordance with this Agreement and the Construction Agreement. . . .

The construction contract contains similar provisions:

1.1 The parties acknowledge that funding for the Work to be performed by Contractor hereunder is provided to Owner through a loan under the Program. The parties acknowledge and agree that the Work to be performed hereunder must be performed in accordance with all requirements of the Program and that all payments to Contractor hereunder are subject to Contractor's compliance with Program requirements. The parties acknowledge and agree that the Program is administered by CNE, and that all provisions of this Agreement are subject to the review and approval of CNE for compliance with the requirements of the Program. The parties understand and agree, however, that the role of CNE is to administer the Program on behalf of the City, and that neither CNE nor the City shall have any responsibility whatsoever to either party for the performance or nonperformance of this Agreement or compliance with the terms hereof by the other party.

. . .

1.6 The parties understand and agree that CNE is nonprofit entity acting solely in an administrative capacity to coordinate the Work and disbursement of Loan proceeds in accordance with the Program, and that CNE shall not be responsible for the respective performance or nonperformance of the Owner and Contractor under this Agreement. The parties understand and agree that all services provided by CNE (including but not limited to the preparation of Contract Documents including a Work Write-Up and Plans and Specifications, assistance with the bidding process and selection by the owner of a contractor, furnishing of forms for use by the parties, and other assistance in connection with this Agreement) shall not in any manner limit or otherwise alter the respective obligations of the parties hereunder, nor create any liability on the part of CNE to either party for any failure or oversight by CNE in providing such services. The parties hereby certify that they have fully reviewed, and will review, any and all documents, papers, calculations, bids, plans, specifications and other materials provided by CNE for accuracy, completeness and compliance with the terms of this Agreement and compliance with all applicable laws, rules and regulations

governing the Property and the Work to be performed thereon, and that the parties will not rely upon CNE with regard to any aspect of this Agreement. Owner and Contractor, jointly and severally, agree to indemnify and forever hold and save harmless and release CNE from any and all loss, cost, expense, injury or damage of every kind, nature or description, including reasonable attorneys' fees, arising under this Agreement or from any source whatsoever. Further, the parties agree that all costs and expenses, including attorneys' fees in a reasonable amount, incurred by CNE in connection with the resolution of any dispute which may arise under this Agreement shall be borne by the Owner and/or Contractor and shall be apportioned by the authority resolving the dispute, taking into account the relative fault of Owner and Contractor with regard to such dispute.

A clause stating that CNE's only responsibility *under the contract* is to disburse the loan in accordance with the contract may not prevent a court from finding that CNE assumed a responsibility outside the contract to supervise the construction. The assumption of risk clause in the construction loan agreement applies to the risk of non-completion which may not include the risk of defective work. As to the inspection provision, the debtor is not relying on negligent inspections by CNE. CNE could also breach the promise not to give directions to the contractor or subcontractors. It apparently is a promise by CNE and not a disclaimer of reliance by the debtor.

In the construction contract, however, the debtor agreed that CNE had no responsibility whatsoever for performance of the construction agreement. The construction loan agreement also provided that CNE accepted no responsibility for quality or timeliness of work done under the contract. These clauses do more than state that the contracts do not impose any responsibility on CNE. The "no responsibility" clause in the construction agreement is clearly broad enough to protect CNE from the claim that it assumed responsibility outside the contract. The clause amounts to a disclaimer by the debtor of reliance on CNE for correct performance of the construction work. It should prevent the debtor from proving that CNE assumed the duty to supervise the construction work. The result is the debtor cannot prove a negligent supervision claim for the purpose of recoupment.

In the two release provisions, the debtor agreed to save harmless and release CNE from any loss, cost, expense, injury, or damage of any kind arising from the agreement or from any source whatsoever. These provisions are broad enough to release CNE from any liability to the debtor for

assuming supervision of the construction. The "save harmless" wording is broad enough to prevent recoupment of a claim based on negligent supervision.

The result is the same as it was for the negligent misrepresentation claim. The agreements prevent the debtor from proving a negligent supervision claim or using it for recoupment. This is true at least to the extent the debtor is asserting nothing more than negligent supervision. The debtor's affidavit suggests other legal theories that go beyond negligence; however, the debtor has not set forth facts that would tend to establish a disregard of the debtor's rights to the point of recklessness or intentional interference with contract by CNE. The court does not have the duty to find other legal theories that may support a viable claim for recoupment by the debtor based on the undisputed facts. Therefore, the court will grant summary judgment to CNE on the debtor's claims for negligent misrepresentation and negligent supervision of the construction, and the claim of CNE shall be allowed as filed.

# # #